AO 106 (Rev. 04/10)  Application for a Search Warrant

AUSA Litton

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio 

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

**Information Associated with Particular Cellular Towers**

)
)
)
)
)

Case No. 2:23-mj-80

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ **Northern** _____ District of _____ **Texas** _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2114 | Assault and/or robbery of a postal employee |

The application is based on these facts:

See Attached Affidavit in Support, incorporated here by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Tyler Schwab, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/7/23

City and state:  Columbus, Ohio

_____
*Judge's signature*

Kinkel  USMJ
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INORMATION ASSOCIATED WITH PARTICULAR CELLULAR TOWERS | Case No. __2:23-mj-80__<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler Schwab, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a warrant for records and information associated with certain cellular towers ("cell towers") that is in the possession, custody, and/or control of AT&T, a cellular service provider headquartered in Dallas, Texas; Verizon, a cellular service provider headquartered in New York, New York; and T-Mobile, a cellular service provider headquartered in Overland Park, Kansas.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require AT&T, Verizon, and T-Mobile to disclose to the government the information further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.     I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since January 6, 2019.  Your Affiant has been assigned to the FBI Safe Streets Task Force in Columbus, Ohio, since January of 2023.  Prior to being assigned to the Safe Streets Task Force, I was assigned to the Joint Terrorism Task Force (JTTF) for approximately four years.  During my assignment at the JTTF, I was a Case Agent and Co-Case Agent for multiple

international and domestic terrorism investigations. While assigned to the JTTF, your Affiant has received specialized training in international terrorism and homicide investigations. Furthermore, I have received training in computer-related crimes as well as in the criminal use of email, social media, and telephonic communications.

3. The facts in this affidavit come from information obtained from other Inspectors with the United States Postal Inspection Service (USPIS). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2114 (assaulting or robbing any person who has lawful charge, control, or custody of any mail matter or of any money or other property of the United States) have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation into violations of 18 U.S.C. § 2114. The current investigation involves a pattern of violent, armed robberies wherein yet-unidentified suspects hold United States Postal Workers at gunpoint and force them to hand over their arrow keys. United States Postal Workers carry arrow keys while they deliver mail. The arrow keys allow mail carriers to gain entry to secured cluster mailboxes. As of the writing of this affidavit, approximately 22 robberies have occurred from January 5, 2022, to January 17, 2023, throughout the Columbus, Ohio area and have been identified as part of this pattern. However, your affiant, believes that at least two of

2

the robberies were committed by the same suspects. These two robberies believed to be connected in the pattern as outlined herein occurred on January 3, 2023.

**Armed Robbery #1-January 3, 2023-509 East Columbus Street, Columbus, Ohio**

6.  On January 3, 2023, at approximately 1:16 p.m., Inspectors with the USPIS responded to 509 East Columbus Street in reference to a robbery of a postal worker.

7.  Upon arrival, Investigators spoke with a postal worker victim "J.H." (a person over 18 years old) who advised the following:

8.  While delivering mail to 499 East Columbus Street, J.H. saw an older model, maroon four door sedan moving slowly down the street. After J.H. delivered packages to 511 East Columbus Street she returned to her postal vehicle. While J.H. was just inside her vehicle getting packages ready for the next delivery, two suspects entered her postal vehicle and pushed her further inside her vehicle. Suspect 1 brandished a handgun and pushed the gun into J.H.'s left side. J.H. began to scream and Suspect 1 and Suspect 2 told J.H. multiple times to stop screaming. Suspect 1 then told J.H. to, "gimme the keys." J.H. had keys attached to her beltloop and struggled to remove them quickly. Once J.H. gave Suspect 1 the keys, Suspect 1 asked J.H., "Where are other keys?" Suspect 1 then patted J.H. down and checked her pockets. The suspects then took a tray of mail to be delivered. J.H. believed the suspects went back to the maroon sedan she had seen earlier but did not see them enter the vehicle. J.H. last saw the maroon sedan heading East on Columbus Street before turning North on an access alley.

9.  J.H. described Suspect 1 as a male, black, 5'8" or shorter, very skinny, under 20 years of age, wearing a beanie cap, hoodie, dark colored clothing, mask (covid or gaitor style mask), with "just shorter than shoulder length braids visible near back of neck."

3

10.     J.H. described Suspect 2 as male, black, 5'8" or shorter, skinny, under 20 years of age, light skinned, wearing dark clothes, beanie cap, and mask. J.H. described Suspect 2 eyes as having "really big, light brown colored almond shaped eyes."

11.     J.H. described the potential suspects' vehicle as a maroon, four door sedan, older, longer vehicle, "boxy," and "boat like" with no visible license plate.

12.     Inspectors canvassed the area and were able to locate a residence with Nest cameras with video of the potential suspects' vehicle driving toward the robbery at 1:08 p.m. and then driving away from the robbery at 1:16 p.m. The below photos were taken from those videos.



4



13.     Todd Ballinger, Administrator with the Ohio Bureau of Motor Vehicles Investigation Section, was shown the above photos of the potential suspects' vehicle. Todd Ballinger identified the vehicle in the photo as a 2001 to 2005 Chevrolet Impala.

**Armed Robbery #2-January 3, 2023-4215 East Broad Street, Whitehall, Ohio**

14.     On January 3, 2023, at approximately 3:49 p.m., Inspectors with the USPIS responded to 4215 East Broad Street in reference to robberies of postal workers.

15.     Upon arrival, Inspectors spoke with postal workers victims "C.M." and "T.W." (both people over 18 years old) who advised the following:

16.     While on their postal delivery route, C.M. was training T.W. While at her postal vehicle, C.M. was approached by two male blacks wearing ski masks. One of the suspects brandished a handgun and put it against C.M.'s stomach.

17.     The suspects then took C.M.'s personal car keys and her arrow key. The suspect with the handgun reached into C.M.'s shirt pocket and removed her USPS identification card but put it back in C.M.'s pocket when they realized that it was not a credit card or debit card.

5

18.     The suspects fled the area in an older model Chevrolet Impala that was purple in color. T.W. was able to get a partial license plate on the Impala. The license plate was a temporary license plate beginning with P78 and was placed in the upper right corner of the rear window.

19.     T.W. also stated that there was third male, black, driver that remained inside the vehicle while the other two suspects committed the robbery.

20.     It is the belief of the affiant that both robberies were committed by the same individuals based on facts that the description and photos obtained of the potential suspects' vehicle in robbery #1 show a maroon/purple Chevrolet Impala, which matches the description of the suspects' vehicle in robbery #2. Additionally, both robberies occurred on the same day, within hours of each other. The suspects in both robberies were also described as male black and used similar modus operandi. In my training and experience, I know that sometimes individuals that commit multiple robberies will use similar tactics and techniques in each robbery they commit. In robbery #1 and robbery #2, the suspects approached female postal workers while they were at or inside their postal vehicles and placed a handgun against their bodies and demanded their keys.

21.     In my training and experience, I also know that sometimes individuals who commit multiple robberies will attempt to change their appearance by changing their clothing or disguises from one robbery to the next. This could explain the difference in the suspects wearing covid or gaitor style masks in robbery #1 and the suspects wearing ski masks in robbery #2. Also, from my training and experience, I know that sometimes the number of individuals involved in one robbery to the next will differ. Often it is the same core group of individuals who commit the robberies but there may be more or fewer individuals involved in each robbery

as individuals join or leave the group throughout the day. This could explain why there were only two suspects involved in robbery #1 and three suspects involved in robbery #2.

22.    In my training and experience, I know that criminals who commit robberies often carry cellular devices and will use those cellular devices to communicate with other participants involved in the robberies. Suspects often carry cellular devices and use them during robberies to coordinate plans and logistics with each other, or to navigate to and away from certain locations, including the site(s) of the robbery. I also know from my training and experience that "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018) (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)). It is therefore likely that the suspects in robbery #1 and robbery #2 were carrying their cellular devices and communicated with each other or other unknown participants via cellular device prior to or just after the robberies took place and/or used their cellular devices for navigation purposes.

23.    In my training and experience, I have learned that AT&T, Verizon, and T-Mobile are companies that provide cellular communications service to the general public. In order to provide this service, many cellular service providers maintain antenna towers ("cell towers") that serve and provide cellular service to devices that are within range of the tower's signals. Each cell tower receives signals from wireless devices, such as cellular phones, in its general vicinity. By communicating with a cell tower, a wireless device can transmit and receive communications, such as phone calls, text messages, and other data. When sending or receiving communications, a cellular device does not always utilize the cell tower that is closest to it.

24.     Based on my training and experience, I also know that each cellular device is identified by one or more unique identifiers. For example, with respect to a cellular phone, the phone will be assigned both a unique telephone number but also one or more other identifiers such as an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The types of identifiers assigned to a given cellular device are dependent on the device and the cellular network on which it operates.

25.     Based on my training and experience, I know that cellular providers, such as AT&T, Verizon, and T-Mobile, routinely and in their regular course of business maintain historical records that allow them to determine which wireless devices used cellular towers on the cellular provider's network to send or receive communications. For each communication sent or received via the wireless provider's network, these records may include: (1) the telephone call number and unique identifiers of the wireless device that connected to the provider's cellular tower and sent or received the communication ("the locally served wireless device"); (2) the cellular tower(s) on the provider's network, as well as the "sector" (*i.e.*, face of the tower) to which the locally served wireless device connected when sending or receiving the communication; and (3) the date, time, and duration of the communication

26.     Based on my training and experience, I know that cellular providers, such as AT&T, Verizon, and T-Mobile, can query their historical records to determine which cellular device(s) connected to a particular cellular tower during a given period of time and to produce

8

the information described above.  I also know that cellular providers can determine which cellular tower(s) provided coverage to a given location at a particular time.

27.     Based on my training and experience and the above facts, information obtained from cellular service providers such as AT&T, Verizon, and T-Mobile that reveals which devices used a particular cell tower (and, where applicable, sector) to engage in particular communications can be used to show that such devices were in the general vicinity of the cell tower at the time the communication occurred.  Thus, the records described in Attachment A will identify the cellular devices that were in the vicinity of the relevant locations at the time of the crimes under investigation. This information, in turn, will assist law enforcement in determining which person(s) were present for each robbery.

## AUTHORIZATION REQUEST

28.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c).

29.     I further request that the Court direct AT&T, Verizon, and T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on AT&T, Verizon, and T-Mobile, who will then compile the requested records at a time convenient to those carriers, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

30.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.  These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation.  Accordingly, there is good cause to seal these documents because

their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

Tyler Schwab
Special Agent
FBI

Subscribed and sworn to before me on Feb 7th , ~~201~~ 2023

UNITED STATES MAGISTRATE JUDGE

10

## ATTACHMENT A

### Property to Be Searched

Records and information associated with communications to and from the following cellular antenna towers ("cell towers") on the identified date(s) and timeframe(s) that are within the possession, custody, or control of the cellular service provider(s) identified below:

| Cell Towers | Dates | Times (All Times EST) |
|---|---|---|
| 1) The cellular towers that provided service to: 509 East Columbus Street, Columbus, Ohio 43206 | 1/3/2023 | 12:56 a.m. to 1:26 p.m. |
| 2) The cellular towers that provided service to: 4215 East Broad Street, Columbus, Ohio 43213 | 1/3/2023 | 3:29 p.m. to 3:59 p.m. |

The following cellular service provider(s) are required to disclose information to the United States pursuant to this warrant:

1. AT&T, a cellular service provider headquartered in Dallas, Texas.
2. Verizon, a cellular service provider headquartered in New York, New York.
3. T-Mobile, a cellular service provider headquartered in Overland Park, Kansas.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

For each cell tower in described in Attachment A, the cellular service providers identified in Attachment A are required to disclose to the United States records and other information (not including the contents of communications) about all communications made using the cellular tower(s) identified in Attachment A during the corresponding timeframe(s) listed in Attachment A, including records that identify:

      a.  the telephone call number and unique identifiers for each wireless device in the vicinity of the cell tower ("the locally served wireless device") that registered with the cell tower, including Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Numbers ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), and International Mobile Equipment Identities ("IMEI");

      b.  for each communication, the "sector(s)" (i.e. the face(s) of the tower(s)) that received a radio signal from the locally served wireless device;

      c.  the date, time, and duration of each communication.

These records should include records about communications that were initiated before or terminated after the timeframe(s) identified in Attachment A if some part of the communication occurred during the relevant timeframe(s) listed in Attachment A.

II. **Information to be Seized by the Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2114 on or about January 3, 2023.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.